# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY A. GARCIA, | Case No. CV 15-9909-KK |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Plaintiff Jerry A. Garcia ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his application for Title XVI Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

///
///
///

---

[1] The Court substitutes Nancy A. Berryhill, the current Acting Commissioner of Social Security, as Defendant in this action. Fed. R. Civ. P. 25(d).

# I.
# **PROCEDURAL HISTORY**

On April 30, 2012, Plaintiff filed an application for SSI, alleging a disability onset date of June 1, 2009. Administrative Record ("AR") at 56, 66, 148-61. Plaintiff's application was denied initially on January 22, 2013. Id. at 69-74. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 75-77. On March 12, 2014, Plaintiff appeared with counsel and testified at a hearing before the assigned ALJ. Id. at 31-54. A vocational expert ("VE") also testified at the hearing. Id. at 48-52. On June 26, 2014, the ALJ issued a decision denying Plaintiff's application for SSI. Id. at 11-25.

Plaintiff filed a request to the Agency's Appeals Council to review the ALJ's decision. Id. at 26-30. On November 2, 2015, the Appeals Council denied Plaintiff's request for review. Id. at 1-7.

On December 28, 2015, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1, Compl. This matter is before the Court on the Parties' Joint Stipulation ("JS"), filed on July 14, 2017. Dkt. 31, JS.

# II.
# **PLAINTIFF'S BACKGROUND**

Plaintiff was born on November 8, 1966, and his alleged disability onset date is June 1, 2009. AR at 55, 56, 66, 148. He was forty-two years old on the alleged disability onset date and forty-seven years old at the time of the hearing before the ALJ. Id. at 34. Plaintiff attended school through the eleventh grade and did not receive a GED. Id. at 35. Plaintiff alleges disability based on back and neck pain, leg and hip pain, leg numbness, Addison's disease, Sarcoidosis, and asthma. Id. at 39-47, 55, 59, 149.

///
///
///

# III.
# **STANDARD FOR EVALUATING DISABILITY**

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[2]
4. Is the claimant capable of performing work he has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.
5. Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

---

[2] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for his verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

    The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## THE ALJ'S DECISION

**A.   STEP ONE**

    At step one, the ALJ found Plaintiff has not engaged "in substantial gainful activity since April 30, 2012, the application date." AR at 16.

**B.   STEP TWO**

    At step two, the ALJ found Plaintiff "ha[d] the following severe impairments: Addison's disease; sarcoidosis; cervical spine degenerative disc disease; lumbar spine moderate degenerative disc disease at L5-S1, and degenerative joint disease at all levels; lumbar spine radiculopathy bilaterally to the ankles; asthma/chronic obstructive pulmonary disease (COPD); eczema; hypothyroidism; migraines; hypertension; and gastroesophageal reflux disease (GERD)." Id.

///
///
///

**C.     STEP THREE**

At step three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id.

**D.     RFC DETERMINATION**

The ALJ found Plaintiff had the following RFC:

> "to perform light work as defined in 20 CFR 416.967(b) except lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand and walk for about six hours out of eight; sit for about six hours out of eight; frequent bilateral upper extremity pushing and pulling; postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling can be performed on an occasional basis; no ladders, ropes, or scaffolds; frequent bilateral overhead reaching, handling, and fingering; avoid concentrated exposure to extreme cold, extreme heat, humidity, irritants such as fumes, odors, dust, and gasses, and hazards such as machinery and heights."

Id. at 17.

**E.     STEP FOUR**

At step four, the ALJ found Plaintiff is "unable to perform any past relevant work." Id. at 21.

**F.     STEP FIVE**

At step five, the ALJ found "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Id.

///
///
///
///

# V.

# PLAINTIFF'S CLAIMS

Plaintiff presents one disputed issue: whether the ALJ properly considered Plaintiff's testimony regarding his subjective complaints.[3]

# VI.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720 (citation omitted); see also Hill v. Astrue, 698 F.3d 1153,

---

[3] Social Security Regulations regarding the evaluation of opinion evidence and credibility were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 Fed. Appx. 801, 805 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); Spencer v. Colvin, No. 15-05925, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"); cf. Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010, 58011 (Nov. 19, 2001) ("With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision."). Accordingly, the Court applies the versions of 20 C.F.R. §§ 416.927 and 416.929 that were in effect at the time of the ALJ's September 26, 2014 decision.

1159 (9th Cir. 2012) (stating that a reviewing court "may not affirm simply by isolating a 'specific quantum of supporting evidence'") (citation omitted). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

## VII.

## DISCUSSION

### THE ALJ IMPROPERLY REJECTED PLAINTIFF'S TESTIMONY REGARDING HIS SUBJECTIVE COMPLAINTS

**A. Relevant Facts**

**1. Plaintiff's Testimony Regarding His Impairments**

Plaintiff testified at the March 12, 2014 hearing before the ALJ regarding his impairments, their symptoms, and their functional effect. AR at 31-54. He testified that he suffers from both Addison's disease and Sarcoidosis. Id. at 40-42. Plaintiff testified that his Scaroidosis results in occasional flareups that attack his lungs. Id. at 41-42. He also testified that his Addison's disease - which, among other things, affects a person's ability to maintain blood pressure and can cause severe fatigue - requires daily medication and treatment for the rest of Plaintiff's life. Id. at 40-42, 224-25.

Plaintiff additionally testified that he has constant neck and lower back pain, which affects his ability to move, sit, and stand. Id. at 40, 42, 44. According to Plaintiff, sitting for long periods of time results in pain and a burning sensation in Plaintiff's legs and hips. Id. at 43, 47. As to his daily activities, Plaintiff testified he does not do any household chores or grocery shopping. Id. at 35-36. He estimated he could sit for thirty minutes, stand for ten minutes, and walk for about five steps before losing his breath. Id. at 36. He further explained he had been using a cane to walk "[f]or about six months." Id.

Plaintiff testified he is unable to work because he "can't bend"; "can't move"; does not have "mobility" of his back and neck; cannot walk far because he runs out of breath; has a suppressed immune system from his medication; has constant pain in his legs and hips; and has intermittent numbness in his left leg. Id. at 39-44. Plaintiff stated the numbness in his leg causes him to fall often, and as a result, doctors prescribed him a cane to use. Id. at 45. He further testified he naps every day for about two hours after taking his medication. Id. at 47. Plaintiff estimated that his symptoms make it difficult for him to get out of bed three or four times a week. Id. at 45.

### 2. The ALJ's Adverse Credibility Finding

The ALJ found Plaintiff was "partially credible." Id. at 20. The ALJ noted that "[w]hile [Plaintiff's] daily activities are limited, the evidence of record does not establish that he is incapable of performing such activities or work-related activities for that matter." Id. at 21. In support of Plaintiff's credibility finding, the ALJ reasoned (1) Plaintiff "has not had any surgeries"; (2) Plaintiff has a history of noncompliance with prescribed treatment; (3) there is no medical evidence supporting the need for an assistive device for ambulation and Plaintiff has only recently started to rely upon one; and (4) there is no medical evidence to support Plaintiff's claimed limitations in lifting more than eight pounds. Id.

///

**B.  Applicable Law**

If "the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect." Robbins v. Social Security Administration, 466 F.3d 880, 883 (2006) (citations omitted).  The ALJ's credibility determination must be supported by "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti, 533 F.3d at 1039 (citation and internal quotation marks omitted).

The ALJ is required to engage in a two-step analysis.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citations and internal quotation marks omitted).  "If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." Id. (citations and internal quotation marks omitted).  "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) (holding "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination").

"If the ALJ's credibility finding is supported by substantial evidence, [a court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).  However, an ALJ's failure to give specific, clear, and convincing reasons to reject the claimant's testimony regarding the severity of the

symptoms is not harmless, because it precludes the Court from conducting a meaningful review of the ALJ's reasoning. Brown-Hunter, 806 F.3d at 489.

## C. Analysis

Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR at 17. Thus, because there was no evidence of malingering, the ALJ was required to provide "specific, clear and convincing reasons" in order to properly reject Plaintiff's testimony about the severity of his symptoms. Molina, 674 at 1112. However, as discussed below, the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony. Id.

### 1. Conservative Treatment

First, the ALJ reasoned Plaintiff had not undergone any surgical intervention for his impairments. AR at 20. However, according to the ALJ's findings, surgery was recommended to Plaintiff, "but the insurance company refused coverage." Id. at 18; see also id. at 297, 341, 350. Plaintiff's failure to seek treatment for which "he had no medical insurance cannot support an adverse credibility finding." Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007); Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995); see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (holding "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding unless one of a "number of good reasons for not doing so" applies). Thus, to the extent the ALJ found Plaintiff received only conservative treatment because he "has not had any surgeries," this is not a proper reason for rejecting Plaintiff's claims regarding the severity of his symptoms.

### 2. Medication Noncompliance

Next, the ALJ found Plaintiff only partially credible because his symptoms worsened when he was noncompliant with his medications. AR at 20. "[W]here evidence suggests that [a plaintiff] had a good reason for not taking medication," an ALJ may not use the plaintiff's failure to comply with his medication regimen as

grounds for rejecting his subjective complaints. Fair, 885 F.2d at 602; Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (holding plaintiff's failure to take medication did not constitute a clear and convincing reason to discredit her symptom testimony when plaintiff was unable to maintain a job, had no insurance, and could not afford her medication).

Here, Plaintiff suffers from Addison's disease, which is "a rare condition" that generally requires a patient "take medicine for the rest of [the patient's] life to treat [the] condition and help prevent an adrenal crisis." Id. at 224. While Plaintiff had periods of noncompliance with his medication, there are doctor notes indicating Plaintiff struggled to maintain his prescriptions at times[4] "due to social circumstances," in that he lacked regular transportation and because of the high expenses involved in getting to medical clinics and paying for the steroid medication to treat Addison's disease. Id. at 279, 285, 287, 289. Doctors requested social workers meet with Plaintiff to assist him in finding regular physician care in light of his social circumstances, but Plaintiff continued to struggle to maintain his care. Id. at 278, 283, 285. Additionally, in 2013, doctors noted Plaintiff stopped taking his medication for a period of four days. Id. at 425. However, doctors further noted that, at that time, Plaintiff was suffering from constant diarrhea and believed the medication was going "straight through" his system. Id. at 425. Thus, in light of Plaintiff's financial, transportation, and medical issues, Plaintiff's failure to comply with medications prescribed by his doctors, does not, alone, constitute a specific, clear, and convincing reason for rejecting Plaintiff's symptom testimony. Smolen, 80 F.3d at 1284.

---

[4] According to the record, Plaintiff's failure to comply with his medication requirements appear to be primarily confined to the treatment prescribed for his Addison's disease – a complicated disease that requires regular and strict adherence to prescribed medications. AR at 224-25. The record does not appear to include similar evidence of noncompliance with prescribed treatment related to his back and neck pain.

11

### 3. No Evidence of Cervicular Radiculopathy or Evidence Supporting the Need for an Assistive Device

Finally, the ALJ rejected Plaintiff's claims that (1) he could only lift eight pounds "and not very often [because] most things hurt [Plaintiff's] lower back"; and (2) he relied on a cane when he walked. AR at 20. In rejecting Plaintiff's lifting limitations, the ALJ concluded there was "no evidence of cervicular radiculopathy and [Plaintiff] has good grip strength."[5] Id. As to Plaintiff's reliance on a cane, the ALJ found Plaintiff has "only used a cane for six months" and noted that Dr. Concepion Enriquez, a consultative physician, found Plaintiff had "no gait abnormality and did not need an assistive device for ambulation." Id. at 20, 300.

Aside from a lack of medical evidence to support Plaintiff's claimed limitations, the ALJ did not provide any further reasons for rejecting Plaintiff's testimony that he could not lift more than eight pounds or that he relied on a cane for balance[6]. "[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). Thus, the lack of medical evidence, alone, was an improper reason for rejecting Plaintiff's claims that he could not lift more than eight pounds and that he needed a cane to help him balance.

Additionally, there *is* evidence in the record to support a finding that Plaintiff (1) required a cane for balance and ambulation, and (2) was limited in his ability to lift certain weight because of his lower back pain. Nevertheless, the ALJ failed to explain why he was rejecting this evidence. For example, notes from a visit to LAC+USC Medical Center Emergency Department on April 10, 2014 indicate

---

[5] While the record supports a finding that Plaintiff has good grip strength, Plaintiff specifically indicated he was limited to lifting eight pounds because of his lower back problems. Id. at 195.

[6] Although the ALJ additionally reasons Plaintiff has only used a cane for six months, it is unclear why this supports the ALJ's rejection of Plaintiff's claimed reliance – particularly in light of the fact that there is medical evidence finding Plaintiff "at risk of falls." Id. at 436-37.

Plaintiff "is at risk of falls," and thus, "use of an assistive device for ambulation" was advised. AR at 436-37. As to Plaintiff's inability to lift more than eight pounds due to his back problems, a diagnosis from a clinic visit on June 28, 2013, indicated Plaintiff suffers from back pain and radiculopathy. Id. at 328. There are also notes from a visit to LAC+USC Medical Center Emergency Department in 2013, which show Plaintiff suffers from "chronic [lower back pain] due to multilevel disease," spondylolisthesis, and "mild degenerative changes of the mid thoracic spine intervertebral discs." Id. at 438. Lastly, the ALJ even acknowledges that Plaintiff "has a history of neck and back pain since 2004" and that Plaintiff "has lumbar spine degenerative disc disease and degenerative joint disease"; yet he fails to explain why he is ultimately rejecting these diagnoses despite the fact that Plaintiff claims these issues affect his ability to lift a certain weight. Id. 18-19.

Thus, the ALJ's claim that there is no evidence to support Plaintiff's subjective complaints that he cannot lift more than eight pounds and that he needs a cane to support himself while he walks, is not a sufficient reason for finding Plaintiff's testimony was not credible.

## VIII.
## **RELIEF**

### A. APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill, 698 F.3d at 1162 (citation omitted). "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly

evaluated." Id. (citations omitted); see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

**B.    ANALYSIS**

In this case, the record has not been fully developed. The ALJ must reassess Plaintiff's credibility and claimed limitations in light of the overall diagnostic record. Accordingly, remand for further proceedings is appropriate.

IX.

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: August 29, 2017

_____
HONORABLE KENLY KIYA KATO
United States Magistrate Judge